UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA       :
                               :
     v.                        :      Crim. No. 3:99cr264(AHN)
                               :
JOHN FOSTER                    :
                               :

<u>RULING ON SENTENCING ENHANCEMENT PURSUANT 21 U.S.C. § 841</u>

The defendant John Foster ("Foster") challenges the
enhancement of his sentence under 21 U.S.C. § 841(b)(1)(A).  At
the resentencing hearing on September 19, 2006, the court orally
ruled that the enhancement should be applied and sentenced Foster
to a 20-year mandatory minimum term of incarceration.  This
opinion sets forth the court's reasoning for the § 841
enhancement.[1]

<u>FACTS</u>

On February 3, 2000, Foster and others were indicted for
conspiracy to possess with intent to distribute and to distribute
heroin and cocaine base in violation of 21 U.S.C. §§ 841(a)(1)
and 846.

On November 7, 2000, the day before jury selection, the

---

[1]  Following the Second Circuit's decision in <u>United States
v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), Foster was resentenced
after this court decided that it would have imposed a materially
different sentence under an advisory sentencing guidelines
regime.  At Foster's resentencing, the court ultimately decided
to impose a non-guidelines sentence.  Because the record from
Foster's resentencing hearing and the judgment issued therefrom
fully describe the court's reasons for imposing a non-guidelines
sentence, the court does not repeat those reasons here.

government filed an information pursuant to 21 U.S.C.
§ 851(a)(1).  The information notified Foster that, because of
his prior narcotics conviction in Connecticut Superior Court for
the sale of narcotics in violation of Conn. Gen. Stat. § 21a-
277(a), the government would seek to enhance Foster's sentence if
he was convicted.  By virtue of this potential enhancement,
Foster faced a statutory mandatory minimum sentence of 20 years.
See 21 U.S.C. § 841(b)(1)(A).

On December 4, 2000, a jury convicted Foster.  On June 18,
2001, the court sentenced Foster to a period of incarceration of
324 months, or 27 years.

On appeal, Foster argued that his sentence was imposed in
violation of Apprendi v. New Jersey, 530 U.S. 466 (2000).
Although the Second Circuit upheld his conviction, it withheld
its mandate until the Supreme Court's resolution of the issues
presented in United States v. Booker, 543 U.S. 220 (2005).  See
United States v. Lewis, Nos. 01-1215, 01-1240, 01-1242, 01-1374,
01-1577, 2004 WL 2242588, at *1 (2d Cir. Oct. 5, 2004).

After the decisions were issued in Booker and in United
States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the Second Circuit
remanded Foster's case for the limited purpose of determining
whether this court "would have imposed a materially different
sentence, under the circumstances existing at the time of the
original sentence, if the judge had discharged his or her

-2-

obligations under the post-<u>Booker/Fanfan</u> regime and counsel had availed themselves of their new opportunities to present relevant considerations . . . ." <u>Crosby</u>, 397 F.3d at 117.  At Foster's request, this court reviewed the sentence it had imposed on June 18, 2001 and determined that it would have imposed a materially different sentence if the sentencing guidelines had been advisory.  Accordingly, a resentencing hearing was scheduled.

Prior to the resentencing hearing, the government moved for an enhanced sentence.[2]  Relying on a § 851 information detailing Foster's prior narcotics conviction, the government argued that Foster was subject to the 20-year mandatory minimum sentence under § 841, rather than the 10-year mandatory minimum sentence that applies to defendants with no prior narcotics conviction.  <u>See</u> 21 U.S.C. § 841(b)(1)(A) (stating that a person convicted under this section "shall be sentenced to a term of imprisonment which may not be less than 10 years . . . ;" but "[i]f any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years . . . .").  After the government filed the § 851 information, Foster challenged the constitutional validity of the guilty plea

---

[2]  The § 841 enhancement was not specifically at issue during Foster's original sentencing because under the then-mandatory sentencing guidelines regime, Foster faced a sentence well in excess of the 20-year mandatory minimum required by § 841.

supporting the prior conviction cited in the § 851 information.
At the resententing hearing, the court found that the prior
conviction was valid and, as a result, Foster faced a mandatory
minimum sentence of 20 years.

DISCUSSION

As grounds for the sentence enhancement under § 841, the
government relies on Foster's prior conviction under Conn. Gen.
Stat. § 21a-277(a).  Foster claims that this prior conviction is
constitutionally invalid because his guilty plea supporting the
conviction was not intelligent and voluntary.  Citing the
transcript of the plea hearing held on March 19, 1999 in
Connecticut Superior Court in Bridgeport, Foster argues that "the
state court did not properly ascertain (1) that he understood the
nature of the charge against him, or (2) that there was a factual
basis for his guilty plea to the sale of narcotics charge . . .
."  Neither of Foster's arguments is sufficient to sustain his
burden of proving that his prior conviction is invalid.  See 21
U.S.C. § 851(a), (c) (providing that a defendant must prove by a
preponderance of the evidence that the prior conviction relied on
in the § 851 information is constitutionally invalid).

The standard for determining the constitutionality of a
guilty plea is the "totality of the relevant circumstances."
Hanson v. Phillips, 442 F.3d 789, 798 (2d Cir. 2006) (citing
Willbright v. Smith, 745 F.2d 779, 780 (2d Cir. 1984) (per

-4-

curiam) and <u>Brady v. United States</u>, 397 U.S. 742, 749 (1970)).  A plea cannot be "intelligent" unless, "at the very least, the defendant understands that he has the right to a trial to determine whether he is guilty, and that, by pleading guilty, he gives up that right and consents to the entry of a guilty verdict, upon which he may be sentenced."  <u>Id.</u> at 799.  Further, a plea cannot be "voluntary" unless "the defendant understands he is under no compulsion to plead guilty and makes the decision of his own free will."  <u>Id.</u>  The record must affirmatively demonstrate that the defendant entered his plea intelligently and voluntarily.  <u>See</u> <u>Brady</u>, 397 U.S. at 747 n.4.  Based on the transcript of Foster's state court plea allocution, the court concludes that Foster's plea was intelligent and voluntary.

I.   <u>Foster's Understanding of the Nature of the Narcotics Charge</u>

The transcript demonstrates that the superior court judge adequately determined that Foster understood the charge against him.  The relevant portion of the transcript states:

> [PROSECUTOR]:  And with regard to docket
> number CR97-0133012, the State's filing a
> substitute information.  To the substitute
> information of possession of narcotics with
> intent to sell on September 30th, 1997 in
> violation of 21a-277a, how do you plea sir;
> guilty or not guilty?
>
> MR. FOSTER:    Guilty.
>
> . . . .

THE COURT:    Have you had an opportunity to
fully  discuss  these  matters  with  your
attorney?

MR. FOSTER:    Yes.

THE COURT:    Has he explained  to  you the
elements, that is what the State would have to
prove  to  convict  you  of  violation  of
probation, possession of narcotics with intent
to  sell,  weapon  in  a  motor  vehicle,  and
failure to appear in the 1st degree?  Did he
go over that with you?

MR. FOSTER:    Yes, sir.

(Plea Hr'g Tr. at 2:17-22, 4:17-26, in State v. Foster, No. 97-
133012 (Conn. Super. Ct. filed Mar. 19, 1999), attach. as Ex. 2
to Def.'s Resp. to Gov.'s 851 Filing [dkt. # 2074]).

      Contrary to Foster's claims, due process is not offended

because the state court did not describe the elements of the

charge, and instead ascertained whether Foster's attorney had

explained to him the nature of the charge.  While a defendant's

plea "would indeed be invalid if he had not been aware of the

nature of the charges against him, including the elements of the

[crimes] to which he pleaded guilty," Bradshaw v. Stumpf, 545

U.S. 175, 182-83 (2005), the Constitution does not require the

court to explain to the defendant the elements of a charged

crime.  "Rather, the constitutional prerequisites of a valid plea

may be satisfied where the record accurately reflects that the

nature of the charge and the elements of the crime were explained

to the defendant by his own, competent counsel." Id. at 183.

"Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty." Id.

Further, under Connecticut law, a trial court is not required to list every element of a charged offense if it has assurances that a defendant has been advised by counsel as to the nature of the charge. See State v. Johnson, 253 Conn. 1, 38-40 (2000) (finding that a plea was intelligent and voluntary where defendant indicated that he had reviewed the charge with his attorney); Oppel v. Lopes, 200 Conn. 553, 560-61 (1986) (concluding that defendant's plea was valid because the record demonstrated that defendant's counsel adequately explained the intent element of the charged offense), rev'd Oppel v. Lopes, 677 F. Supp. 86, 87 (D. Conn. 1987), rev'd Oppel v. Meachum, 851 F.2d 34, 38 (2d Cir. 1988) (reviewing Connecticut Supreme Court's decision by way of § 2254 petition and stating that based on the record and the lack of "evidence indicating that [the movant] was unaware of the elements of the crime of murder at the time he tendered his plea, we conclude that it is appropriate to presume that [the movant's] attorney informed him of the elements of the crime prior to the time he tendered his plea"), cert. denied 488 U.S. 911 (1988); State v. Monk, 88 Conn. App. Ct. 543, 552 (2005) ("It is well established that a trial court may properly rely on

-7-

the responses of the defendant at the time she responded to the trial court's plea canvass.") (internal quotations omitted).  As the Connecticut Supreme Court has stated:

> The trial court's failure to explicate an element renders the plea invalid only where the omitted element is a critical one . . . and only where it is not appropriate to presume that defense counsel has explained the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.

Johnson, 253 Conn. at 38 (internal quotations omitted).

Moreover, despite Foster's argument, the Second Circuit's recent decision in Hanson v. Phillips, 442 F.3d 789 (2d Cir. 2006), does not compel the court to find that Foster's plea was invalid because the state court judge's inquiry was phrased as a compound question or even because the inquiry was phrased as two successive questions.  In Hanson, the Second Circuit, reviewing the denial of a § 2254 petition, found the petitioner's state court guilty plea invalid because the trial court, among other errors, "ran together a series of confusing questions," and the defendant interspersed "yes" responses in such a way that the Second Circuit could not clearly determine which question the defendant's affirmative response addressed.  See id. at 790, 799. The trial court, for example, asked the defendant whether he intended to plead guilty to the charge, but before the defendant could respond, the court asked a separate question about the sentence, to which the defendant responded, "Yes."  See id. at

-8-

791.  Because the defendant's plea allocution was elicited in
such a confusing manner, the Second Circuit found that the
defendant's response failed to provide any reasonable assurance
that the defendant intelligently and voluntarily pleaded guilty.
See id. at 800.

        The exchange between Foster and the state court does not
suffer from the infirmities addressed in Hanson.  In Foster's
case, the relevant exchange began where the state prosecutor
asked Foster how he wished to plead to the narcotics charge.
Foster responded, "Guilty."  Later in the proceeding, the court
asked Foster whether his counsel had explained the elements of
the four charges, including the sale of narcotics charge.  Before
Foster could answer that question, the court asked, "Did he go
over that with you?"  Unlike Hanson, where the judge asked two
different questions in succession, the state court's second
question to Foster merely reiterated and summarized the first
question.  When the state court judge asked Foster if counsel
went over "that" with him, the judge was referring to the
elements of the charges, i.e., the "violation of probation,
possession of narcotics with intent to sell, weapon in a motor
vehicle, and failure to appear in the 1st degree."  Foster's
response, "Yes, sir," indicated to the state court (and this
court) that counsel had reviewed the elements of the four charges
with him.  Moreover, the record shows that Foster's counsel did

-9-

not dispute or otherwise qualify Foster's response, which further indicates that, before the plea hearing, Foster and he discussed the elements that the state would have to prove to convict Foster on the narcotics charge.  The exchange between the state court judge and Foster provided the judge with sufficient assurance that Foster had notice of the charges against him.  See Panuccio v. Kelly, 927 F.2d 106, 111 (2d Cir. 1991) ("The trial court could also appropriately assume that Panuccio understood the charges against him since he was represented by counsel who had presumably explained the charges to him.").  Foster has not demonstrated any other circumstances that undermine what the transcript demonstrates – that Foster voluntarily pleaded guilty to the narcotics charge after discussing the nature of the charge with his counsel prior to the plea allocution.  See 21 U.S.C. § 851(c)(2).

    II.  Factual Basis Underlying Foster's Guilty Plea

        There is similarly no merit to Foster's claim that his plea was invalid because the state court failed to test the factual basis for the sale of narcotics charge.

        According to the transcript, the following colloquy took place regarding the facts surrounding that charge:

-10-

[PROSECUTOR]:  He failed to appear on
December 9th, 1997, when he was supposed to
be considering the offer of five, two, three
on the underlying possession of narcotics
with intent to sell, which stemmed from an
incident where he was observed throwing down
some drugs which the officers were able to
retrieve and field tested positive back on
September 30th, 1997.

. . . .

THE COURT:  Now with regard to the narcotics
and failure to appear, you heard the
prosecutor recite the facts, is that
basically what happened?  You were in
possession or – custody – is this an Alford
plea?

[FOSTER'S COUNSEL]:  I thought we waived the
reading of the facts?

THE COURT:  Oh, no, no.  But I've got to ask
him.  You heard the facts on that particular
case; is that basically what happened?  You
didn't show up and you had some narcotics in
which you were in possession, in custody, or
control of a sufficient amount to indicate
possession with intent to sell; was that
basically it?  You've got to say yes or no?

MR. FOSTER:    Yes, sir.

Plea Hr'g Tr. at 3:1-7, 6:21-27, 7:1-7.

Foster argues that aside from mixing questions about the
facts underlying two different charges, the colloquy between the
state court judge and Foster failed to inform him of important
facts supporting the narcotics charge, such as the type and
quantity of narcotics that Foster was charged with possessing.
Foster also claims that the state court judge created the
problems described in Hanson because the judge did not elicit a

-11-

definitive response from Foster regarding whether he agreed with the prosecutor's recitation of the facts.  The court agrees that the record could be clearer in this regard, but concludes that this does not invalidate Foster's guilty plea.

After the state court judge asked whether Foster was entering an <u>Alford</u> plea,[3] Foster's counsel responded that he believed Foster had waived the reading of the facts related to the narcotics and failure to appear charges.  The judge, however, insisted on eliciting for the record Foster's agreement with the facts as described by the prosecutor.  Thus, in successive questions, the judge asked Foster if he agreed with the prosecutor's recitation of the facts supporting those charges. After prompting by the judge about whether the prosecutor's recitation of the facts was "basically it," Foster stated, "Yes," thereby indicating his agreement with the prosecutor's summation of those underlying facts.  However, because the prosecutor's recitation of the facts did not identify the type and quantity of narcotics involved and the court did not inquire further, Foster was never canvassed about those facts.

But the failure to canvass Foster about the type and quantity of narcotics does not, by itself, invalidate Foster's

---

[3]  A subsequent portion of the transcript indicates that Foster entered an <u>Alford</u> plea on the weapon in a motor vehicle and violation of probation, but not the narcotics charge.  <u>See</u> Plea Hr'g Tr. at 7:8-20.

plea.  As the Second Circuit has stated, a state court's failure
to question a defendant about the factual basis for his plea does
not constitute a due process violation because a "factual basis
inquiry . . . is merely one way of satisfying the constitutional
requirement that a plea be voluntary and intelligent."
Willbright v. Smith, 745 F.2d 779, 781 (2d Cir. 1984) (per
curiam).  It is Rule 11, not due process, "that requires federal
courts to conduct a factual inquiry before accepting a guilty
plea."  Id. at 780 (citing McCarthy v. United States, 394 U.S.
459, 465 (1969)).  As state courts are not bound by Rule 11, they
do not have to "engage in any particular interrogatory
'catechism.'" Hanson, 942 F.3d at 798.  Indeed, it is well
settled that Connecticut state courts "are under no
constitutionally imposed duty to establish a factual basis for a
guilty plea prior to its acceptance unless the judge is put on
notice that there may be some need for such an inquiry."  State
v. Greene, 274 Conn. 134, 149 (2005).

Having already determined that Foster was aware of the
charge against him, the court finds no reason to doubt that under
the totality of the circumstances Foster was afforded due process
simply because the state court did not canvass Foster as to the
quantity and type of narcotics underlying the charge to which he
pled guilty.  Moreover, while in open court and represented by
competent counsel, Foster denied that anyone threatened him to

plead guilty and affirmed that he pleaded guilty freely and
voluntarily.  (Plea Hr'g Tr. at 5:24-27, 6:1-20).  As the Supreme
Court has made clear, "[s]olemn declarations in open court carry
a strong presumption of verity."  Blackledge v. Allison, 431 U.S.
63, 74 (1977); see Willbright, 745 F.2d at 780-81.

     Further, Foster's claim of invalidity is undermined by the
circumstances in which it is asserted.  Rather than challenge the
validity of his plea and conviction on appeal or in a habeas
petition, Foster waited seven years and challenges it for the
first time in response to the government's efforts to enhance his
sentence in this case.  See Willbright, 745 F.2d at 781 (finding
a guilty plea to be intelligent and voluntary because, among
other things, the defendant did not assert that he was not guilty
until four years after he pleaded guilty, and only then, in a
resentencing proceeding).  Indeed, Foster could have moved to
withdraw his guilty plea in state court, even after it was
accepted, for the exact reasons he now asserts.  See Conn. Super.
Ct. R. § 39-27 (permitting the state court to revoke a
defendant's plea agreement after its acceptance for a number of
reasons, including "[t]he plea . . . was entered without
knowledge of the nature of the charge" or "[t]here was no factual
basis for the plea").  Considering all of these circumstances,
the court finds that Foster was afforded due process and that any
asserted inadequacy in the factual basis inquiry supporting the

-14-

sale of narcotics charge does not invalidate his guilty plea to that charge.

<u>CONCLUSION</u>

For the foregoing reasons, the court finds that Foster's plea was intelligent and voluntary and that he is subject to a twenty year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A).

SO ORDERED this 14th day of November, 2006 at Bridgeport, Connecticut.

<u>                    /s/                    </u>
                   Alan H. Nevas
          United States District Judge